The opinion of the Court was delivered by
O’Neall, J.
We concur with the Chancellor, that upon the purchaser with a warranty of title, express or implied, being evicted by either a paramount title or an incumbrance, the consideration of the contract must be regarded as having entirely, or partially, failed, according to the nature of the recovery had, either at the time the contract was entered into, or at the time of the recovery. The effect of an entire failure - is always to entitle the party to recover back the price paid, with or without interest, or if unpaid to be protected against its payment. If the consideration of the purchase has been paid, the right of the purchaser to recover it back, with interest, depends upon the nature of the title by which he has been evicted. If it was a paramount adverse title he is entitled to interest from the time the purchase money was paid, for his title fails from its commencement. If it was an incumbrance merely, as an exe *313 cution or mortgage, his title only fails from the time the lien is enforced, and hence he is only from that time entitled to interest. For until then he has had the actual possession, and could have sustained no injury or loss. If the purchase money is not paid, but remains in a security, then in the case of eviction by a paramount adverse title of the whole property sold, the whole consideration having failed, the contract is regarded as nudum pactum. If the eviction is by a legal incumbrance of the whole property sold, it then operates as a failure of the consideration from the day of eviction, and the vendor is entitled to rent, hire or interest to the day of eviction, if the contract bore interest. If the failure is only partial, then, unless it goes to defeat the whole object of the purchase, the party is entitled to recover, if the price has been paid, or, if unpaid, to have a deduction made for the relative value which the part recovered bore to the whole in the purchase.
In the case before us, the eleven negroes, upon which the mortgage was foreclosed, were rated in the contract of purchase at $400 each; they were, therefore, the exact consideration of the bond given up by the executrix to her co-defendant Maxwell, and hence he was entitled to have that much deducted from his purchase. But this deduction can only be allowed to be made at tjie time of the foreclosere. The defect or failure of title in consequence of it, does not go back to the commencement of his title. As the vendee of the mortgagor, he was entitled to hold possession until the mortgagee thought proper to demand it. Up to the day of the foreclosure he had the benefit of his purchase, and must either pay interest or hire, (as the bond bore interest from its date.) The Chancellor has directed him to account for the hire, and I see no reason to be dissatisfied with his decree in this respect.
The recovery in the action of detinue,, for the bond by A, Johnston, trustee, against the executrix of Withers, cannot conclude the complainants. She could not, in that case, make the question, that the bond must be considered as a gift by Withers *314 in fraud of the rights of his creditors. For she only represented the rights of her testator, and if his gift was good against him, it must of necessity be so against her. The right of the creditors to make and investigate the question, whether it was or was not a fraud on their rights, is a right against the executrix as well as the donee. They may, therefore, make the question, notwithstanding the right of property may have been judicially determined between the donor, or his executors, and the donee.
Upon the facts in relation to the bond to A. Johnston, in trust for the Misses Maxwell, I confess that I should have been better satisfied, had the Chancellor arrived at a different conclusion.
Did Withers promise to make this donation to the Misses Maxwell of $4,200, as an inducement to their father, Maxwell, to enter into the contract for the purchase of the forty-three slaves, at an advance of about $100 each, over and above their value 1 is the only question. If he did, the decree-is right: if the did not, it is wrong. For the $4,200, if it was voluntarily and without valuable consideration, secured to them, is as plain a fraud upon the rights of creditors, as the gift of ten or eleven slaves would have been.
The evidence is conflicting; but if I had been trying the case in the first instance, I should have found great difficulty in getting over Maxwell’s letter offering $400 round for the slaves, and pressing for the contract. But as there was a great deal of testimony heard viva voce on the trial, which satisfied the Chancellor that the prospect of benefit to his family from this purchase by Maxwell, was held out by Withers as an inducement : and that this procured from the defendant the purchase at a sum greatly beyond the real value of the slaves; and as the opportunity of judging correctly of facts is much better in the Circuit Court than in the Court of Appeals; and as ihe entire responsibility of a decision on viva voce testimony is devolved on the Chancellor, as on a jury, I am con *315 tented to affirm his decree. The motion to reverse the circuit decree is therefore dismissed.
Johnson, J., concurred.

Appeal dismissed.